UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
SOUTHEASTERN DIVISION

ANTHONY PETTIGREW,                  )
                                    )
              Petitioner,           )
                                    )
       v.                           )        Case No. 1:23-cv-00034-SNLJ
                                    )
UNITED STATES OF AMERICA,           )
                                    )
              Respondent.           )

## MEMORANDUM AND ORDER

On March 14, 2023, Petitioner Anthony Pettigrew ("Pettigrew") filed this Motion to Vacate, Set Aside or Correct Sentence pursuant to Title 28, United States Code, Section 2255. This Court then ordered the United States to show cause why the relief requested in Hudson's motion should not be granted. Based on the reasons set forth below, this Court will dismiss Pettigrew's claims as waived and procedurally barred or otherwise deny them without an evidentiary hearing because they fail as a matter of law.

## I.    STATEMENT OF FACTS[1]

On July 28, 2021, law enforcement agents with Alcohol, Tobacco, Firearms, and Explosives (ATF) and the Drug Enforcement Agency (DEA) were working with officers from the Poplar Bluff Police Department (PBPD) on a narcotics investigation involving Pettigrew. A confidential source (CS) arranged to purchase four ounces of

---

[1] This section is materially identical to the "Facts" section in the parties' Guilty Plea Agreement which was adopted by the Court. *United States v. Anthony Pettigrew*, No. 1:21-cr-00101-SNLJ ("Crim. Case"), Doc. 36 at 4-5. These facts also track the final Presentence Investigation Report, see Crim. Case, Doc. 44 ("PSR"), which Pettigrew accepted without objection. Doc. 43.

methamphetamine from Pettigrew at Pettigrew's residence located at 45 East Street in Wilson City, Missouri. Pettigrew resided at the residence with his mother. The CS was equipped with an audio-video recording device and provided $1,900.00 to complete the transaction. Of that amount, $1,200 was earmarked for the present drug sale and the remaining $700 was to square-up with Pettigrew for an earlier drug sale.

The CS met with Pettigrew at a gas station in Sikeston, Missouri, and followed him to his residence in Wilson City. ATF and DEA agents conducted surveillance. Pettigrew entered the residence to retrieve the methamphetamine while CS remained outside. Pettigrew exited the residence a few minutes later with approximately three ounces of methamphetamine. CS stated that he wanted to purchase the full four ounces initially agreed to. Pettigrew responded that he would need to cut the additional ounce from a pound reserved for another customer. Pettigrew then reentered the residence and returned a short time later with the additional ounce of methamphetamine. CS handed Pettigrew the money.

On August 12, 2021, a federal search warrant was executed at the residence of Anthony Pettigrew at 45 East Street, Wilson City, Missouri. Agents with ATF, DEA, and the Federal Bureau of Investigations (FBI) participated in the execution of the warrant. Pettigrew was outside the residence when law enforcement officers arrived and was taken into custody on a federal arrest warrant for the July 28, 2021, drug sale. The following items were located and seized from the residence: (1) a Smith & Wesson, SD9 VE, 9mm semi-automatic pistol, bearing serial number FXM3400; (2) a Taurus TCP, .380 caliber semi-automatic pistol, bearing serial number 75789B; (3) a Jennings, model Bryco 59, 9mm semi-automatic pistol, bearing serial number 797773; (4) a Jimenez Arms, Model

JAT380, .380 caliber semi-automatic pistol, bearing serial number 430482; (5) a quantity of methamphetamine weighing approximately 186 grams; (6) a small quantity of heroin; and (7) digital scales commonly used for weighing narcotics. Additionally, the firearms were loaded with ammunition and there was additional ammunition seized from the residence.

Pettigrew admitted that he knowingly sold more than fifty grams of methamphetamine to CS on July 28, 2021, and further admitted that he was in possession of the firearms and more than fifty grams of methamphetamine on August 12, 2021. Additionally, Pettigrew admitted that he possessed the firearms in furtherance of his drug enterprise, in that, the firearms provided protection during his drug transactions, protecting both the methamphetamine as well as money obtained from the drug sales. The firearms were not manufactured in Missouri, and, therefore, traveled in interstate commerce before being recovered in Missouri. Additionally, Pettigrew admitted that he had previously been convicted of at least one felony offense which was punishable by imprisonment for a term exceeding one year.

The PSR provided additional context to both the drug sale and subsequent search of the residence. Specifically, in relation to the distribution of methamphetamine occurring on July 28, 2021, paragraph 12 of the PSR added the following detailed explanation:

> As part of an undercover narcotics investigation, on July 26, 2021, an ATF agent and a Confidential Informant (CI) with the Poplar Bluff, Missouri Police Department arranged to purchase approximately four ounces of methamphetamine from Anthony Pettigrew on July 28, 2021, in exchange for $1,200 in United States currency. The CI met Pettigrew at a Rhodes gas station located off Kingshighway in Sikeston, Missouri. The defendant instructed the CI to follow him to his mother's residence located at 45 East

Street, in Wilson City, Missouri. Upon arrival at 45 East Street, the CI remained in their vehicle and the defendant entered the residence. A few minutes later, Pettigrew exited the residence and placed a softball size, white plastic bag on the center console of the CI's vehicle and stated, "That's three of them right there." The CI inquired the cost of the methamphetamine, and the defendant responded the cost of the three ounces was $900. The CI advised Pettigrew that he had wanted four ounces. Pettigrew informed the CI he needed to go back in the residence and cut the ounce out of a "pound" that he had reserved for another customer. The defendant returned to the CI's vehicle a short time later with the additional ounce of methamphetamine and the CI provided Pettigrew with $1,200 in United States currency.

Crim. Case, Doc. 44 at ¶ 12. Additionally, in relation to the search warrant and recovery of the firearms and additional quantity of methamphetamine occurring on August 12, 2021, paragraph 14 of the PSR added a similarly detailed rendition:

On August 12, 2021, a search warrant was executed for 45 East Street in Wilson City, Missouri. A search of the residence resulted in the discovery of a bag containing pre-packaged marijuana, three jars containing marijuana, a scale, an additional bag containing marijuana in the first bedroom; a Smith and Wesson, model: SD9 VE, 9mm semi-automatic pistol with a magazine capable of holding 16 rounds of ammunition was located in a second bedroom; and a scale, a bag containing a powder like substance and a small bag with a white powder residue were located in the kitchen. Additionally, the following items were located in the fourth bedroom of the residence: a Taurus, Model: TCP, .380 ACP firearm loaded with an unknown amount of ammunition; a Jennings, Model: Bryco 59, 9mm semi-automatic pistol loaded with an unknown amount of ammunition, a Jimenez Arms, Model: JAT, .380 caliber firearm; a bag of crystal-like substance; and a bag containing a light brown substance. Further investigation of the fourth bedroom revealed mail addressed to Pettigrew, the defendant's identification card and an unknown amount of United States currency being located. The parties agreed approximately 186 grams of methamphetamine was seized.

*Id*. at ¶ 14.

## II.    PROCEDURAL HISTORY

On August 3, 2021, a federal grand jury charged Pettigrew with distribution of fifty grams or more of methamphetamine, in violation of 21 U.S.C. § 841(a)(1), for the events

occurring on July 28, 2021. Crim. Case, Doc. 1. Pettigrew was arrested on August 12, 2021, on a federal warrant. The federal public defender's office was appointed to represent Pettigrew on the date of his arrest. Crim. Case, Doc. 6. On September 7, 2021, the grand jury, by way of superseding indictment, charged Pettigrew with three additional counts, including: Count II, felon in possession of a firearm, in violation of 18 U.S.C. § 922(g); Count III, possession with intent to distribute fifty grams or more of methamphetamine, in violation of 21 U.S.C. § 841(a)(1); and Count IV, possession of a firearm in furtherance of a drug trafficking crime, in violation of 18 U.S.C. § 924(c)(1)(A), for events occurring on August 12, 2021. Crim. Case, Doc. 19. The federal public defender's office remained Pettigrew's counsel of record.[2] Pettigrew waived the filing of any pretrial motions on October 1, 2021, and requested the matter be set for plea hearing. Crim. Case, Docs. 28-30.

A written Guilty Plea Agreement ("Agreement") was entered into pursuant to Rule 11(c)(1)(A). Crim. Case, Doc. 36. In exchange for Pettigrew's voluntary plea of guilty to all four counts in the superseding indictment, the government agreed "that no further federal prosecution will be brought in this District relative to the Defendant's possession of controlled substances and firearms on July 28, 2021, and August 12, 2021, in Mississippi County, Missouri." *Id*. at 2. Additionally, the parties agreed "that either party may request a sentence above or below the U.S. Sentencing Guidelines range (combination of Total

---

[2] Federal Public Defender Michael Skrien was initially appointed to represent Pettigrew and continued his representation from initial arraignment through the guilty plea hearing. Crim. Case, Doc. 38. On February 2, 2022, federal public defender Amanda Altman entered her appearance on behalf of Pettigrew and defender Skrien withdrew. Crim. Case, Docs. 41-42. Defender Altman continued to represent Pettigrew throughout the duration of his case, to include at his sentencing hearing.

Offense Level and Criminal History Category) ultimately determined by the Court pursuant to any chapter of the Guidelines and Title 18, United States Code, Section 3553(a). *Id*.

The Agreement provided that "[t]he parties waive all rights to appeal all non-jurisdictional, non-sentencing issues, including, but not limited to, any issue relating to pretrial motions, discovery, and the guilty plea, the constitutionality of the statute[s] to which Defendant is pleading guilty and whether the Defendant's conduct falls within the scope of the statute[s]." *Id*. at 10. Pettigrew also waived "all rights to contest the conviction or sentence in any post- conviction proceeding, including one pursuant to Title 28, United States Code, Section 2255, except for claims of prosecutorial misconduct or ineffective assistance of counsel." *Id*. Lastly, in signing the Agreement, Pettigrew acknowledged that "no person has, directly or indirectly, threatened or coerced [him] to do or refrain from doing anything in connection with any aspect of this case, including entering a plea of guilty[,] … and "further acknowledge[d] that this guilty plea [was] made of the Defendant's own free will and that the Defendant [was], in fact, guilty." *Id*. at 13.

The Court held a change-of-plea hearing on December 2, 2021, to ensure that Pettigrew fully understood the Agreement and wished to plead guilty under the terms described above. Crim. Case, Doc. 35; Crim. Case, Doc. 61 ("Plea Hr'g. Tr."). After Pettigrew was placed under oath, the Court inquired whether he was satisfied with the way his lawyer handled the case, whether his lawyer did everything Pettigrew asked him to do and verified that Pettigrew had "no gripes or complaints whatsoever." *Id*. at 4. Pettigrew further verified that he had read the Agreement, had gone over it in detail with his lawyer, that his lawyer had explained the contents of the agreement in detail to him, that he

understood everything in the Agreement, and that there was nothing in the agreement that he did not understand. *Id*. at 6-7. Pettigrew further acknowledged that it was his signature on the Agreement, and that by signing the Agreement he was acknowledging that its contents were true and accurate, and that it was the "complete, full, total agreement." *Id*. at 7.

Upon further questioning from the Court, Pettigrew admitted that he was guilty of the charged offenses. He further admitted that the offense conduct set forth in the Agreement was true and correct, that he did all those acts described, and that there was no question about it. *Id*.at 17. Finally, Pettigrew acknowledged that that no one had forced him to plead guilty, and that he was pleading guilty because he was in fact guilty. *Id*. at 19. Accordingly, the Court found that Pettigrew made his plea "freely, knowingly, and voluntarily," and "that [he] admitted the essential elements of the crime charged," and found Pettigrew guilty as charged. *Id*. 19-20.

A Disclosure Presentence Investigation Report was prepared by the United States Probation Office and filed with the Court on January 26, 2022. Crim. Case, Doc. 38. The Disclosure PSR reconfirmed the details of the Agreement, and further provided a vivid accounting of the facts that occurred in the Offense Conduct section. *Id*. at ¶¶s 11-19. Pettigrew filed his Acceptance to the PSR on February 4, 2022, acknowledging he had no objection to its content or accuracy. Crim. Case, Doc. 43. The Final PSR was filed on February 23, 2022, which mirrored the Disclosure PSR, as there were no objections by either party. Crim. Case, Doc. 44. Pettigrew's total offense level was calculated at 23 and his criminal history category was IV, reflecting a sentencing guideline range of 70-87

months, plus 60 months consecutive for the 924(c) count.

Pettigrew's sentencing hearing was held on March 2, 2022. Crim. Case, Doc. 53. The Court inquired on the record whether Pettigrew read the PSR and had gone over it in detail with his lawyer. Crim. Case, Doc. 63 ("Sent. Hr'g.Tr."). Verifying that there were no "additions, corrections, or objections," the Court adopted the PSR in its entirety. *Id*. at 2-3. The Court explained that the guideline range on Counts I, II, and III, was 70-87 months, and 60 months on Count IV to be served consecutively. *Id*. at 3. Pettigrew acknowledged there were no objections to the guidelines calculations. *Id*. The Court impressed upon Pettigrew that he was willing to give him lenient treatment, even though Pettigrew was a "repeat drug offender" and "the circumstances of this offense were aggravated because of the firearms." *Id*. 7. The Court then sentenced Defendant to the statutory mandatory minimum sentence, a total aggregate sentence of 120 months, consisting of 60 months concurrent on counts 1-3, and a consecutive 60 months on count 4, a downward variance from the sentencing guidelines. *Id*. at 8; *see also* Crim Case, Doc. 55. Pettigrew did not file a direct appeal.

Even though Pettigrew received the lowest possible statutory sentence of 120 months, on March 13, 2023, Pettigrew filed the instant motion for post-conviction relief, advancing three claims of ineffective assistance of counsel. Crim Case, Doc. 58; Doc. 1. Because these claims fail as a matter of law, the Court will dismiss the motion without a hearing.

## III.    LEGAL STANDARD

"Section 2255 was intended to afford federal prisoners a remedy identical in scope

to Federal habeas corpus." *Sun Bear v. United States*, 644 F.3d 700, 704 (8th Cir. 2011) (en banc) (quotation omitted). And like habeas corpus, this statutory remedy "does not encompass all claimed errors in conviction and sentencing." *Id*. (quoting *United States v. Addonizio*, 442 U.S. 178, 185 (1979)). Under section 2255(a), a petitioner may file a motion for post-conviction review on four specified grounds: "(1) 'that the sentence was imposed in violation of the Constitution or laws of the United States,' (2) 'that the court was without jurisdiction to impose such a sentence,' (3) 'that the sentence was in excess of the maximum authorized by law,' and (4) 'that the sentence is otherwise subject to collateral attack.'" *Martin v. United States*, 150 F.Supp. 3d 1047, 1049 (W.D. Mo. 2015) (quoting *Hill v. United States*, 368 U.S. 424, 426-27 (1962)). The petitioner bears the burden of proof as to each asserted ground for relief. *Golinveaux v. United States*, 915 F.3d 564, 567 (8th Cir. 2019) (citation omitted).

## A. **Claims Alleging Ineffective Assistance of Counsel**

To prevail on a claim of ineffective assistance of counsel, a petitioner has the burden of proving his or her claims by a preponderance of the evidence. The United States Supreme Court set forth the standard to apply in *Strickland v. Washington*, 466 U.S. 668 (1984). First, a petitioner must prove that counsel's performance was so deficient that counsel was not functioning as the counsel guaranteed by the Sixth Amendment. *Id*. at 687. As to the "deficiency" prong, the defendant must show that counsel "failed to exercise the customary skills and diligence that a reasonably competent attorney would [have] exhibit[ed] under similar circumstances." *Cheek v. United States*, 858 F.2d 1330. 1336 (8th Cir. 1988); (quoting *Hayes v. Lockhart*, 766 F.2d 1247, 1251 (8th Cir. 1985)). Second,

petitioner must show that petitioner was prejudiced by counsel's errors, and but for counsel's errors the result of the proceeding would have been different. *Id*. At 694. Where a reviewing court determines that the challenged errors had no impact on the result of the proceedings, the ineffectiveness claim fails. *Fields v. United States*, 201 F.3d 1025, 1027 (8th Cir. 2000). To demonstrate prejudice after a guilty plea, petitioner must establish that there is a reasonable probability that but for counsel's errors, he would not have pleaded guilty but would have proceeded to trial. *Hill v. Lockhart*, 474 U.S. 52, 57-59 (1985). Where petitioner cannot affirmatively prove prejudice, the performance prong need not be addressed. *Boysiewick v. Schiro*, 179 F.3d 616, 620 (8th Cir. 1999) (citing *Pryor v. Norris*, 103 F.3d 710 (8th Cir. 1997)).

### B.  <u>Need for an Evidentiary Hearing</u>

A motion filed under 28 U.S.C. § 2255 should be denied without an evidentiary hearing when the court records conclusively show that the petitioner is not entitled to relief. A hearing is not required "where the claim is inadequate on its face or if the record affirmatively refutes the factual assertions upon which it is based." *Anjulo-Lopez v. United States*, 541 F.3d 814, 817 (2008) (quoting *Watson v. United States*, 493 F.3d 960, 963 (8th Cir. 2007)). The Eighth Circuit has repeatedly recognized, "[a] § 2255 motion can be dismissed without a hearing if (1) the petitioner's allegations, accepted as true, would not entitle the petitioner to relief, or (2) the allegations cannot be accepted as true because they are contradicted by the record, inherently incredible, or conclusions rather than statements of fact." *Tinajero-Ortiz v. United States*, 635 F.3d 1100, 1105 (8th Cir. 2011) (quoting *Sanders v. United States*, 341 F.3d 720, 722 (8th Cir. 2003)). Conclusory allegations will

simply not suffice. *United States v. Robinson*, 64 F.3d 403 (8th Cir. 1995) (a hearing is unnecessary when a Section 2255 motion (1) is inadequate on its face, or (2) although facially adequate, is conclusively refuted as to the alleged facts by the files and records of the case.

## IV.    DISCUSSION

Pettigrew advances three ineffective assistance of counsel claims in his post-conviction request. The first two claims challenge sufficiency of the evidence and will be addressed together. Specifically, in Ground One, Pettigrew challenges counsel's failure to argue whether he even possessed the firearms in addition to their connection to his drug trafficking for 924(c) purposes. In Ground Two, Pettigrew challenges counsel's failure to argue his connection to the property searched to further advance his possession of the firearms claim. Finally, in Ground Three, Pettigrew argues counsel over-represented his sentencing exposure, effectively coercing his guilty plea. As each of these claims fails on the merits, the Court will dismiss Pettigrew's motion absent a hearing.

### A.    **Grounds One and Two**

In his first two claims for post-conviction relief, Pettigrew alleges that counsel "failed to argue that [he] did not have 'constructive' possession of a firearm nor was it in furtherance of a drug trafficking crime." Doc. 1. Further, he claims counsel failed to argue that he "owned the premises, habitated [sic] in the room, or had any dominion or control over the firearm[s]." *Id*. (Memorandum in Support, at 10, 16). Specifically, Pettigrew contends that he was outside the residence when law enforcement officers arrived. He was thereafter handcuffed and removed from the residence prior to officers executing the search

11

warrant. He further stated there was a firearm found in one bedroom of the residence, and three additional firearms and a quantity of narcotics found in another bedroom, which was not enough evidence to establish he possessed the firearms in furtherance of a drug trafficking offense. Additionally, Pettigrew argued that he "never owned or lived at the purported residence," which was owned by his mother, and "housed multiple residents." Doc. 1 (Memo. at 16).

Based on uncontroverted facts from both the Agreement and the PSR, there was ample evidence to show, first, Pettigrew's interest in the subject premises located at 45 East Street in Wilson City, Missouri. For starters, Count I of the indictment occurred at the subject premises. Pettigrew met up with the CS at a Rhodes Gast Station in Sikeston, and asked CS to follow him to his residence. Once they arrived at the subject premises, Pettigrew went inside to retrieve the methamphetamine. When Pettigrew exited the residence and approached CS with the drugs, he was an ounce short of the four ounces agreed to. CS told Pettigrew he wanted the extra ounce. Pettigrew responded that he needed to go back inside and cut the additional ounce from a pound reserved for another customer. Pettigrew reentered the residence and returned a short time later with the additional ounce of methamphetamine. Whether Pettigrew's mother is listed on the deed as the actual owner and whether others occupy the dwelling, matters not. Pettigrew clearly deals his drugs from the subject premises. Further, Pettigrew was present at the residence the day the U.S. Marshals arrested him on his federal warrant, which was also the day law enforcement officers conducted their search and located the narcotics and firearms that were seized in the same bedroom with Pettigrew's personal effects.

Further, there was ample evidence that Pettigrew had possession of the firearms and that they were possessed in furtherance of his drug trafficking enterprise. Notwithstanding Pettigrew's claim that there was insufficient evidence that he possessed the firearms and did so in furtherance of drug trafficking, officers located three firearms in the bedroom identified as Pettigrew's, in part, by mail addressed to Pettigrew and his identification card located in the same bedroom. PSR ¶ 14. All three firearms were loaded with ammunition and there were additional quantities of ammunition located in the bedroom. *Id*. Also located in that same bedroom with the loaded firearms, were 186 grams of methamphetamine, a small amount of heroin, and a quantity of U.S. currency. *Id*. Additionally, the Agreement listed the following contraband seized from the residence:

- Smith & Wesson, SD9 VE, 9mm pistol, bearing serial number FXM3400, with magazine
- Taurus TCP .380 ACP, bearing serial number 75789B, with ammunition
- Jennings Firearms, Model Bryco 59, 9mm, bearing serial number 797773, with ammunition
- Jimenez Arms, Model JAT380, .380 caliber, bearing serial number 430482, with magazine
- Additional ammunition
- Approximately 186 grams of methamphetamine
- Small quantity of heroin
- Weighing scales

Crim. Case, Doc. 36 at 5. The Agreement stated, "Pettigrew further admits that he was in possession of firearms and more than fifty grams of methamphetamine that he intended to distribute on August 12, 2021 . . . Pettigrew also admits that he possessed the firearms in furtherance of the sale of methamphetamine, in that, the firearms would provide protection during the sale and possession of the methamphetamine and the money obtained from the

sale." *Id*. at 6. Thereafter, Pettigrew signed and dated the Agreement, attesting to its accuracy. *Id*. at 11.

Pettigrew further shored up his guilt at the plea and sentencing hearings. During his plea hearing, this Court explained the charges against him and listed the elements of the crimes to which he was pleading guilty. Crim. Case, Doc. 61 at 18-19. The Court made certain that Pettigrew understood every element of the four offenses to which he was pleading guilty, and further ascertained that his counsel had explained every element to him. *Id*. After the factual basis was made, the Court specifically inquired whether Pettigrew did everything the AUSA said he did, and that there was no question about it. *Id*. at 17-18. The Court again inquired at sentencing whether there were any objections to the PSR and gave a further opportunity for Pettigrew to bring to the Court's attention, any issue, question, or concern Pettigrew had. Crim. Case, Doc. 63 at 2. Hearing none, this Court went on to sentence Pettigrew to the minimum possible statutory sentence, consisting of 60 months on counts I-III to run concurrent to each other, and 60 months consecutive on Count IV, for a total aggregate sentence of 120 months. Crim. Case, Doc. 55; Crim. Case, Doc. 63.

The Eighth Circuit has held that "[t]o establish that a defendant possessed a firearm in violation of § 924(c), the Prosecution must prove that (1) he committed a drug trafficking crime, and (2) he possessed a firearm in furtherance of that crime." *United States v. Saddler*, 538 F.3d 879, 888 (8th Cir.2008) (quoting *United States v. Garcia-Hernandez*, 530 F.3d 657, 661 (8th Cir.2008). Further, there must be a nexus between these two requirements. *United States v. Thorpe*, 447 F.3d 565, 568 (8th Cir.2006). This can be

accomplished by showing a proximity between the firearm and the drugs to support an inference that the firearm is for the protection of the drugs. *Saddler*, at 888 (quoting *United States v. William*, 512 F.3d 1040, 1044 (8th Cir.2008), cert denied, 553 U.S. 1099 (2008).

Here, three loaded firearms, including a Taurus .380, a Jennings 9mm, and a Jimenez Arms .380, were found in the same bedroom as 186 grams of methamphetamine. Further, there was a controlled buy of four ounces of methamphetamine from Pettigrew at this residence two weeks prior where Pettigrew exited the residence an ounce short and went back inside to cut the additional ounce from a pound reserved for another customer. The proximity of the loaded firearms to the drugs and the quantity of methamphetamine seized during the search, coupled with the amount purchased during the controlled buy and the pound remaining in the home, clearly provided sufficient evidence for a jury to find Pettigrew possessed the firearms, and further, that he possessed them in connection with his drug enterprise.[3]

Pettigrew's argument, attacking counsel for failure to challenge the elements of

---

[3] Significantly, further evidence of Defendant's guilt existed in the record from the federal search warrant (SW) filed in Case No. 1:21-mj-04153-ACL, including the following language: Paragraph 10 of the SW provided: "[t]he CI relayed that he/she has purchased two (2) to four (4) ounces of methamphetamine from PETTIGREW every other week for approximately one year. The CI stated that he/she will almost always meet PETTIGREW at this residence, 45 East Street in Wilson City, MO, to purchase methamphetamine and only a few times has met PETTIGREW away from this location." Paragraph 11 of the SW provided: "[t]he CI stated PETTIGREW stores his narcotics inside the residence and believes he also stores narcotics inside the shed located in the backyard. … The CI stated that he/she has been inside this residence approximately three (3) times when purchasing methamphetamine, the last time in March 2021. While inside the residence, the CI stated that he/she observed methamphetamine in plain view in the kitchen. The CI stated that every time he/she has purchased methamphetamine from PETTIGREW at this residence, PETTIGREW is always present, sells directly to the CI and that no one else has 'served' or sold him/her narcotics." Finally, Paragraph 16 of the SW provided: "[t]he CI also informed SA Dallas of an occasion that he/she witnessed PETTIGREW in possession of firearms. In April 2021, the CI relayed that he/she drove one of PETTIGREW'S vehicles on his behalf as PETTIGREW did not have a valid driver's license. The CI stated that he/she followed PETTIGREW to 45 East Street, Wilson City, MO. Once there, the CI stated PETTIGREW called him/her back to the brown, portable warehouse shed located behind the house and retrieved firearms wrapped in a blanket and located on a top shelf to the left of the door. The CI described the firearms as a 9mm rifle and two (2) 9mm Glock pistols."

"possessing" firearms and doing so "in furtherance of a drug trafficking crime," suggests that he is actually innocent of the 18 U.S.C. § 922(g) and 924(c) offenses, because the Government failed to prove that he was in "constructive possession" of the firearms and further failed to prove that the firearms were possessed in connection with his drug enterprise. Ignoring that Pettigrew's actual innocence claim is procedurally defaulted as not being raised on direct appeal, "[a] free standing claim of actual innocence is not a recognized ground for federal habeas relief," and it is unclear how a "gateway claim" would be relevant here. *See Peck v. United States*, No. 4:15CV961 ERW, 2015 WL 5518745, at *2 n.1 (E.D. Mo. Sept. 17, 2015); *Golden v. United States*, No. C 12-4012-MWB, 2013 WL 452862, at *7-8 (N.D. Iowa Feb. 6, 2013) (explaining the distinction between "gateway" and "freestanding" claims of actual innocence, "[a] gateway claim of actual innocence, as previously recognized by the Supreme Court, exists when a petitioner attempts to avoid a procedural bar that would otherwise preclude him or her from bringing other claims.") (citations omitted). Regardless, Pettigrew has not offered any new evidence supporting this claim. "[I]n order to succeed with a claim of actual innocence, a petitioner must present new evidence that affirmatively demonstrates that he is innocent of the crime for which he was convicted." *Id*. Not only has Pettigrew failed to present any "new reliable evidence" to undercut his repeated admissions of guilt during his plea, but he has also further failed to demonstrate "it is more likely than not that no reasonable juror would have found [him] guilty beyond a reasonable doubt." *See United States v. Sanchez-Maldonado*, No. CR04-4055-MWB, 2008 WL 4911853, *4-5 (N.D. Iowa Nov. 14 2008) (quoting *House v. Bell*, 547 U.S. 518, 536-37 (2006)).

Indeed, Pettigrew has not claimed there is any new evidence to be presented as to his gun and drug charges, but merely claimed insufficient evidence to support his convictions. Moreover, the record in this matter clearly refutes any claim of actual innocence. Based on the existing record, objective, reasonable jurors could have found Pettigrew guilty. Thus, Pettigrew's "gateway" claim of actual innocence fails. *See Bousley v. United States*, 523 U.S. 614, 623 (1998) (noting "that 'actual innocence' means factual innocence, not mere legal insufficiency" citing *Sawyer v. Whitley*, 505 U.S. 333, 339 (1992)).

## B. <u>Ground Three</u>

Pettigrew claims that his trial counsel gave ineffective assistance regarding sentencing by "advis[ing]' the petitioner that if he did not plead guilty pursuant to the plea agreement, but rather proceeded to trial, and if the jury returned a verdict of guilty on the firearm count [924(c)], the court would then sentence the petitioner to a term of life imprisonment." Memo. at 21-22. Pettigrew claims that he was "induced" into pleading guilty by the erroneous advice from trial counsel regarding his sentencing exposure. *Id*. at 21. "[I]naccurate advice of counsel about the sentencing guidelines or likely punishment does not render involuntary a defendant's decision to plead guilty, so long as the defendant is informed of the maximum possible sentence permitted by statute and the court's ability to sentence within that range." *United States v. Quiroga*, 554 F.3d 1150, 1155-56 (8th Cir. 2009) (discussing cases).

"A guilty plea must represent the informed, self-determined choice of the defendant among practicable alternatives; a guilty plea cannot be a conscious, informed, self-

determined choice if the accused relies upon counsel who performed ineffectively in advising him." *United States v. Fallon*, No. CR-03-3068-7-MWB, 2009 WL 88567, at *9 (N.D. Iowa Jan. 13, 2009) (quoting *Hawkman v. Parratt*, 661 F.2d 1161, 1170 (8th Cir.1981) (citing *United States ex rel. Healy v, Cannon*, 553 F.2d 1052, 1056 (7th Cir.1977)).

A guilty plea constitutes a waiver of various constitutional rights, and must be knowing, voluntary, and intelligent with sufficient awareness of relevant circumstances and likely consequences. *Fallon*, 2009 WL 88567, at *9 (citing *United States v, Martinez-Cruz*, 186 F.3d 1102, 1104 (8th Cir.1999)). The Eighth Circuit has recognized that a plea agreement may not be knowing and voluntary when it is the result of the ineffective assistance of counsel. See *DeRoo v. United States*, 223 F.3d 919, 923-24 (8th Cir. 2000) (citing *Hill v Lockhart*, 474 U.S. 52, 56 (1985)); *see also Nguyen v. United States*, 114 F.3d 699, 703 (8th Cir. 1997). At the same time, a "defendant's representations during the plea-taking carry a strong presumption of verity and pose a formidable barrier in any subsequent collateral proceedings." *Id*.

Pettigrew contends that trial counsel advised him that he would receive a life sentence if he were convicted at trial. The record clearly refutes Pettigrew's allegation. The record reveals, instead, that Pettigrew was fully advised of the statutory range of punishment for his 18 U.S.C. § 924(c) offense, and informed, as required, of the minimum and maximum sentence he could receive—that being 5 years to a life sentence. The signed Agreement sets forth the statutory ranges of punishment on each of the four counts, and the Court also advised Pettigrew of the full ranges of punishment, to include the statutory

maximums, at his plea hearing. As to his plea to 18 U.S.C. § 924(c), the Court stated:

The Court:    Finally, on Count 4, possession of a firearm in furtherance of a drug-trafficking crime, the penalty is imprisonment for up to life or again, a combination of fine or imprisonment. The supervised release period is up to 5 years. And there is a mandatory minimum term of imprisonment of at least 5 years, so that the actual range of punishment is 5 years minimum to life. And the sentence on Count 4 must be served consecutively and not concurrently to any and all sentences imposed against you, including Counts 1, 2, and 3 and any other sentences from any other court."

And then, finally, at the very bottom, if you're subject to any undischarged or anticipated term of imprisonment imposed by any other court or in any other case such as being on parole or probation or supervised release, the sentences imposed in this case could be run consecutively and not concurrently to any parole, probation, or supervised release revocation. Do you understand all that too?

Defendant:    Yes, sir.

The Court:    And, certainly Count 4 has to be run consecutively to those revocations. Do you understand all that?

Defendant:    Yes, sir.

The Court:    Do you have any questions about it?

Defendant:    No, sir.

The Court:    I'm going to recap: Count 1, 5 years minimum and 40 years maximum. Count 2, up to 10 years in prison, unless you're an armed career criminal. In which case it's a minimum of 15 up to life. Count 3, 5 years minimum, 40 years maximum. Finally, Count 4, 5 years minimum to life, and that sentence must be served consecutively to all other sentences. Do you understand?

Defendant:    Yes, sir.

The Court:    Knowing all that you still wish to plead guilty?

| Defendant: | Yes, sir. |
|---|---|
| The Court: | Any questions about it? |
| Defendant: | No, sir. |
| The Court: | All right. I'm going to consider the full range of punishment on all of these charges. And then the sentence to be imposed will be in my discretion within those ranges of punishment. Do you understand that too? |
| Defendant: | Yes, sir. |

Defendant: Yes, sir.

Crim. Case, Doc. 61 at 12-14. At no time did Pettigrew indicate that he did not understand the statutory mandatory minimum and maximum penalties even though the Court gave him multiple opportunities to do so.

The record also reveals that Pettigrew was satisfied with the services of his counsel, that he did everything he asked him to do, and investigated his case in detail. *Id*. at 4. Pettigrew acknowledged receiving a copy of the Agreement, having sufficient time to review it, and going over it in detail with his counsel. *Id*. at 6-7. Further, that his attorney answered any questions that he had about the Agreement, and there was nothing in the Agreement he did not understand, to include the sentencing options. *Id*. at 10-13. He thereafter signed the Agreement, attesting to its accuracy. The Court conducted an extensive discussion of the voluntariness of Pettigrew's guilty plea, and, at no time during the hearing, did Pettigrew indicate that his decision to plead guilty was not a knowing and voluntary one.

The record refutes Pettigrew's claim that counsel instructed him he would receive a life sentence were he convicted at trial. The record clearly refutes that counsel "made errors so serious that counsel was not functioning as the counsel guaranteed the defendant by the Sixth Amendment." *United States v. Rice*, 449 F.3d 887, 889 (8th Cir.2006) (quoiting *Strickland*, 466 U.S. at 687). Additionally, in choosing to plead guilty, collateral review is "ordinarily confined to whether the underlying plea was both counseled and voluntary." *United States v. Broce*, 488 U.S. 563, 569 (1989). A counseled and voluntary plea is made with "sufficient awareness of the relevant circumstances and likely consequences." *Brady v. United States*, 397 U.S. 742, 748 (1970). Pettigrew was indeed of aware of the relevant circumstances and likely consequences of pleading guilty and fails to show that his plea was uninformed or involuntary. He further fails to show any deficient performance by counsel. Finally, Pettigrew has not shown prejudice to a degree that had he proceeded to trial no reasonable juror would have convicted him. For all these reasons, his ineffective assistance of counsel claim fail.

## VI.   CONCLUSION

For the foregoing reasons, this Court will deny Pettigrew's § 2255 motion [Doc. 1] without an evidentiary hearing.

**IT IS FURTHER ORDERED** this Court will not issue a certificate of appealability because Pettigrew has not made a substantial showing of the denial of federal constitutional right.

**SO ORDERED** this 10th day of February, 2025.

_____
STEPHEN N. LIMBAUGH, JR.
SENIOR UNITED STATES DISTRICT JUDGE